PEOPLE v HOLGUIN

Docket No. 70553. Submitted December 4, 1984, at Lansing.—Decided March 5, 1985.

Alfonso Holguin was convicted of receiving and concealing stolen property, Ingham Circuit Court, Thomas L. Brown, J. Defendant was also adjudged to be a fourth-felony offender and was sentenced. Defendant appeals, alleging that the trial court erred in striking the testimony of a defense witness and that the charge should be dismissed because his preliminary examination was conducted more than 12 days after his arraignment. *Held:*

1. The defense witness, the owner of the house in which the stolen property was found, testified that the defendant had stayed at the house regularly for a few weeks prior to his arrest. She also testified that the property had been left at the house by another friend and that the defendant was unaware of the arrangement. When asked on cross-examination to divulge the name of the friend who left the property, the witness refused. The court thereafter ordered that her entire testimony be stricken. The court erred in doing so. The information refused did not relate to the issues being tried, *i.e.,* the witness's sole possessory interest in the house and the defendant's pattern of visitation at the house. The circumstances required the striking of, at most, that portion of the witness's direct testimony that related to the circumstances under which the property was delivered to her house.

2. Exclusion of the testimony was not harmless error because it was particularly critical to a fair determination of the defendant's guilt or innocence.

3. The statutory requirement of holding a preliminary examination within 12 days of arraignment is mandatory, even where there is no showing of prejudice to the defendant by a

REFERENCES FOR POINTS IN HEADNOTES
[1] 21A Am Jur 2d, Criminal Law §§ 953-955.
   75 Am Jur 2d, Trial § 43.
[2] 75 Am Jur 2d, Trial § 170.
[3] 50 Am Jur 2d, Larceny §§ 13, 47.
[4] 21 Am Jur 2d, Criminal Law §§ 411, 414.

longer delay. The delay requires reversal; however, reversal is without prejudice to the prosecutor's right to reinstate a prosecution.

Reversed.

1. CRIMINAL LAW — WITNESSES — DUE PROCESS — ADMISSIBILITY OF TESTIMONY — JUDGE'S DISCRETION.

The right of a criminal defendant to present his or her own witnesses at trial to establish a defense is a fundamental element of due process; however, the right is not absolute and must be weighed against the need for established rules of procedure and evidence designed to assure fairness and reliability in the ascertainment of guilt or innocence; the balancing of these competing interests in determining the admissibility of a witness's testimony is within the discretion of the trial judge.

2. CRIMINAL LAW — WITNESSES — RECALCITRANT WITNESS — STRIKING OF TESTIMONY.

In a case where a defense witness refused to answer certain questions asked by the prosecutor on cross-examination and where the information sought is only partly connected to the issues being tried or to the information obtained on direct examination, it is unnecessary to strike the whole of the witness's direct-examination testimony; rather, it is sufficient to strike only that portion of the witness's direct-examination testimony which relates to the information sought by the cross-examination.

3. CRIMINAL LAW — CONCEALING STOLEN PROPERTY.

Concealment, for purposes of the offense of receiving and concealing stolen property, involves the intentional hiding, putting out of sight, disguising or disposing of property to avoid discovery or observation (MCL 750.535; MSA 28.803; CJI 26:1:03).

4. CRIMINAL LAW — PRELIMINARY EXAMINATION — DELAY — PREJUDICE TO DEFENDANT.

The statutory requirement that a defendant is to be afforded a preliminary examination within 12 days of arraignment is mandatory, even in a case where there is no showing of prejudice to the defendant caused by a delay; however, a reversal of a conviction because of a violation of the statute may be ordered to be without prejudice to the prosecutor's right to reinstate a prosecution (MCL 766.4; MSA 28.922).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Peter D. Houk,* Prose-

cuting Attorney, *Robert B. Ebersole,* Chief Appellate Attorney, and *Susan L. LeDuc,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *R. Steven Whalen),* for defendant on appeal.

Before: J. H. GILLIS, P.J., and M. J. KELLY and K. N. SANBORN,* JJ.

PER CURIAM. Defendant appeals as of right from a jury conviction of receiving and concealing stolen property, MCL 750.535; MSA 28.803. Following conviction on a supplemental information charging him with being a fourth-felony offender, defendant was sentenced to a term of from 5 to 10 years in prison. We reverse.

On July 20, 1982, twelve Lansing police officers executed a search warrant at a private residence located at 1521 Reo Road where they discovered several TV's, stereos, jewelry boxes, bedspreads and firearms, all of which were later identified as stolen property. At trial, the prosecution introduced evidence establishing that the owner or tenant of the home was Alla Fay Thornsbury and that defendant resided there with her, at least for the two-month period immediately preceding the execution of the search warrant.

Thornsbury was the only defense witness presented at trial. She testified on direct examination that she had lived at the Reo Road residence for approximately five years with her three sons and one daughter. During the two months prior to July 20, 1982, defendant was a regular visitor at the residence and spent some nights. According to Thornsbury, defendant paid no rent or bills or maintenance costs and had no authority or control

---

* Circuit judge, sitting on the Court of Appeals by assignment.

over the house. The witness further testified that a
friend had asked her if he could leave the stolen
property at her home and that defendant was
unaware of the arrangement.

On cross-examination, Thornsbury refused to
divulge the name of the friend who had deposited
the stolen property at her house. Thornsbury con-
tinued to refuse even after the court instructed
her to answer. The prosecutor then asked the
court to strike her testimony. The court complied
and the jury was instructed to disregard her entire
testimony.

On appeal, defendant contends that the trial
court erred in striking Thornsbury's entire testi-
mony and that the effect of the error was that he
was denied his constitutional right to present a
defense. Upon analysis of this very difficult ques-
tion, we find that it was error for the trial court in
this case to strike the entire testimony of the
noncooperative witness.

In *Washington v Texas,* 388 US 14, 19; 87 S Ct
1920; 18 L Ed 2d 1019 (1967), the United States
Supreme Court held that a fundamental element
of due process is the right of a criminal defendant
to present his or her own witnesses at trial to
establish a defense. That right is not absolute,
however, and must in some cases be weighed
against the need for "established rules of proce-
dure and evidence designed to assure both fairness
and reliability in the ascertainment of guilt and
innocence". *Chambers v Mississippi,* 410 US 284,
302; 93 S Ct 1038; 35 L Ed 2d 297 (1973). The
balancing of these competing interests in deter-
mining the admissibility of a witness's testimony is
a matter within the discretion of the trial judge.
*People v Carter,* 96 Mich App 694, 703; 293 NW2d
681 (1980), *lv den* 410 Mich 872 (1980).

In cases where a prosecution witness testifies on

direct examination and then refuses to answer certain questions on cross-examination, courts have generally focused upon three criteria in deciding whether to strike the witness's testimony. (1) If the information sought on cross-examination closely relates to the issues being tried and if the inability to develop the information deprives the defendant of his right to test the credibility of the witness, then the noncooperative witness's entire testimony should be stricken. (2) A less drastic approach is preferred where the information sought on cross-examination is only partly connected to the issues being tried or to the information obtained on direct examination. Under these circumstances a partial striking of the witness's testimony on direct examination is sufficient. (3) Finally, where the information sought on cross-examination is merely collateral or cumulative, the refusal of a witness to be cross-examined on those matters does not require that any testimony be stricken and an instruction to the jury is all that is necessary. *United States v Stephens,* 492 F2d 1367, 1374-1375 (CA 6, 1974).

We believe that the same general considerations are applicable in cases where a defense witness refuses to submit to cross-examination by the prosecutor. In this case, the only information that was refused on cross-examination was the name of the person who delivered the stolen property to the witness's home. While that information may have been probative of the witness's credibility on the question of how she and the defendant came to possess the property, it did not relate to testimony regarding her sole possessory interest in the Reo Road residence or to testimony regarding the defendant's pattern of visitation during the two months preceding the execution of the search warrant. We conclude that a balancing of the compet-

ing interests requires, at most, a striking of the witness's testimony only as it relates to the circumstances under which the stolen property was delivered to her house.

We cannot say that the error in this case was harmless. While we believe, contrary to the defendant's position on appeal, that the evidence introduced at trial was sufficient to support his conviction, we are persuaded that the case presented by the prosecution to the jury was a close one. As explained to the jury by way of CJI 26:1:03, concealment involves the intentional hiding, putting out of sight, disguising or disposing of property to avoid discovery or observation. The evidence introduced at this trial established that defendant resided at the Reo Road residence and occupied the bedroom in which much of the stolen property was discovered. Defendant's residency spanned the time period during which the property had been stolen from the owners. Further, the evidence established that defendant used some of that property. We find that a reasonable trier of fact could have concluded from this evidence that defendant intentionally aided in the concealment of property stolen, *People v Hampton,* 407 Mich 354, 368; 285 NW2d 284 (1979), *cert den* 449 US 885; 101 S Ct 239; 66 L Ed 2d 110 (1980), particularly given the court's instruction that defendant was not under a duty to report stolen property to the police.

Because of the closeness of the case, however, we find that Thornsbury's testimony was particularly critical to a fair determination of defendant's guilt or innocence. Since we cannot say that the exclusion of that testimony was harmless error we must reverse the defendant's conviction.

Defendant also contends that the charge against him should be dismissed because his preliminary examination was conducted more than 12 days

after his arraignment. He was arriagned on July 28, 1982, and the preliminary examination was conducted on August 19, 1982, resulting in a 22-day delay.

MCL 766.4; MSA 28.922 provides:

"The magistrate before whom any person is brought on a charge of having committed a felony shall set a day for a preliminary examination not exceeding 12 days thereafter, at which time a magistrate shall examine the complainant and the witnesses in support of the prosecution, on oath in the presence of the accused, in regard to the offense charged and in regard to any other matters connected with the charge which the magistrate considers pertinent."

Until recently, this Court has declined to reverse criminal convictions for noncompliance with the 12-day rule where there was no showing of prejudice to the defendant. In *People v Weston,* 413 Mich 371; 319 NW2d 537 (1982), however, the Michigan Supreme Court rejected the "no prejudice/no reversible error" rule, interpreting the 12-day rule as "an unqualified statutory command that the examination be held within 12 days". 413 Mich 376.

The prosecution argues that the intent of the Legislature in enacting MCL 766.4; MSA 28.922 was to prohibit the state from holding a presumptively innocent defendant in custody for longer than 12 days in the absence of any probable cause hearing. The prosecution then reasons that because defendant in this case was arrested at Thornsbury's house on an escape charge, the time spent in custody between the arraignment and the preliminary examination would have been served regardless of the results of the probable cause hearing. We conclude that this argument falls within the "no prejudice/no reversible error" rule

rejected by the Supreme Court in *Weston*. Thus, reversal of defendant's conviction is also required under MCL 766.4; MSA 28.922. As in *Weston,* however, reversal is without prejudice to the prosecutor's right to reinstate a prosecution.

Reversed.